■ In the Matter of JAMIE FORSYTH, Respondent, v CHARLES WHITE, JR., Appellant. [698 NYS2d 795] —Mikoll, J. Appeal from an order of the Family Court of Tompkins County (Sherman, J.), entered February 2, 1998, which, *inter alia*, granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, for custody of the parties' child.

The parties, who were never married, are the parents of a son born in 1996. Petitioner commenced this proceeding in June 1997 seeking sole custody of the child, and respondent cross-petitioned for the same relief. At the ensuing fact-finding hearing, Family Court heard the testimony of the parties and several relatives on behalf of each. After determining that an award of joint custody would not be feasible given the volatile and acrimonious relationship between the parties (*see, Braiman v Braiman*, 44 NY2d 584, 589-590; *Matter of Maurer v Maurer*, 243 AD2d 989, 991), the court awarded custody to petitioner, with liberal visitation to respondent. Respondent now appeals, contending that Family Court's determination was based not on evidence contained in the record but on the biased recommendation of the Law Guardian. We cannot agree.

The standards governing judicial custody determinations, and our review of same, have been repeatedly articulated. Of paramount concern is the best interest of the child, ascertainment of which typically entails consideration of the quality of the parents' home environment, their relative stability and financial situation, and their fitness and ability to facilitate the child's growth and development (*see, Eschbach v Eschbach*, 56 NY2d 167, 172; *Matter of Farnham v Farnham*, 252 AD2d 675, 676; *Matter of Donato v McLaughlin*, 249 AD2d 859). In view of Family Court's superior ability to evaluate the testimony, character and credibility of the competing parties, we accord considerable deference to its resolution of factual issues and will disturb these determinations only where they are bereft of substantial support in the record (*see, Matter of Lukaszewicz v*

*Lukaszewicz,* 256 AD2d 1031, 1033; *Matter of Morgan v Becker,* 245 AD2d 889, 890).

Applying these principles here, we find no basis to disturb Family Court's determination that petitioner is the more appropriate custodial parent. Despite respondent's assertion that the court's findings lack evidentiary support, it is clear that the crux of his complaint is disagreement with the result of the court's credibility determinations and resolution of conflicting testimony. Thus, although both parties claimed to have been the child's primary caregiver during their 10 months of cohabitation after his birth, Family Court found that petitioner had assumed this role with respondent performing some feeding and bathing duties. Similarly, petitioner described her two-year relationship with respondent as fraught with physical abuse, verbal altercations and efforts by respondent to control her actions through physical violence and verbal intimidation. While respondent claims that petitioner manufactured the allegations of domestic violence to buttress her position in the custody dispute, Family Court credited her explanation that she did not reveal the existence of her problems with respondent at his direction.

Family Court also accepted petitioner's account of two incidents which it viewed as indicative of respondent's efforts to intimidate and forcibly control her. The first incident occurred when petitioner left the parties' trailer home to call her grandmother to retrieve her and the child. Respondent followed her in his car and forcibly removed the child, throwing him into the car. When petitioner attempted to retrieve the child, respondent violently pushed her, bruising her shoulder. A portion of the encounter was witnessed by petitioner's brother and his girlfriend, whose testimony corroborated petitioner's. Respondent offered a more benign account of the episode, insisting that petitioner initially told him to take the child and that, when she changed her mind, he pushed her without intending to hurt her, explaining that she "bruises real easily". Family Court found that respondent's denial lacked credibility.

The second incident occurred the following day when, believing that respondent was at work, petitioner and her mother drove to his mother's home hoping to see the child. Finding that respondent was, in fact, there, they decided not to go in the house. Upon seeing petitioner and her mother outside the house, respondent followed them in his car at a high rate of speed, stopping in front of them and blocking the roadway. Successfully evading him, petitioner and her mother drove to a

stranger's house to summon the police. When the police arrived, respondent drove away at a high rate of speed and had an accident. Respondent's version of the incident was that he followed petitioner in order to tell her that she was welcome to visit the child. Again, Family Court rejected respondent's explanation as incredible.

Finally, we find no merit in respondent's claim that in awarding custody to petitioner, Family Court improperly relied on the recommendation of a Law Guardian who was biased and hostile to respondent. One of the functions of a Law Guardian is to assist the court in determining an appropriate disposition. (*see, Matter of Dewey S.*, 175 AD2d 920, 921). An obvious incident of the Law Guardian's role as advocate for the child is the right to advance the disposition perceived to be most consonant with the well-being of the child.* Nothing in the record before us suggests that the Law Guardian's position was derived from anything but the evidence adduced at the hearing.

Cardona, P. J., Crew III, Yesawich Jr. and Mugglin, JJ., concur. Ordered that the order is affirmed, without costs.

---

* "Law Guardians are not neutral automatons. After an appropriate inquiry, it is entirely appropriate, indeed expected, that a Law Guardian form an opinion about what action, if any, would be in a child's best interest" (Besharov, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 241, at 218-219).